DECISION
Plaintiffs appeal the Notice of Refund Denial issued by Defendant on July 2, 2010, for the 2009 tax year. The denial was based on Defendant's determination that Plaintiffs were not entitled to a portion of the claimed working family child care credit (WFC). A trial was held in this matter on April 26, 2011. Seth Murray (Murray) appeared and testified on behalf of Plaintiffs. Kevin Cole (Cole), Tax Auditor, appeared and testified on behalf of Defendant.
Plaintiffs offered Exhibits 1 through 39. Cole objected to Plaintiffs' Exhibits 26 and 27, affidavits of Tyra Murray and Dorothy Mayne, based on his inability to cross examine the statements in the affidavit. The court admitted Plaintiffs' Exhibits 26 and 27, noting that the court would consider Cole's objections in weighing the evidence. Cole also objected to Plaintiffs' Exhibits 38 and 39. The court admitted Plaintiffs' Exhibit 38, the court's Order Granting Discovery, because it is already part of the case history in this matter. The court admitted Plaintiffs' Exhibit 39, Defendant's Response to Discovery Order, as Defendant's response was not received by Plaintiffs until April 13, the day after the Plaintiffs' 14-day exhibit exchange postmark date of April 12, 2011. Defendant offered Exhibits A through H. Murray objected to Defendant's Exhibit F, copies of letters exchanged by the parties concerning Plaintiffs' partnership tax return, based on relevance. The court admitted Defendant's Exhibit F, *Page 2 
noting that the court would consider Murray's objection in weighing the evidence. Optional written closing arguments were submitted by the parties and the record closed on May 17, 2011.
 I. STATEMENT OF FACTS
A. Procedural background and parties' requests
Defendant issued a Notice of Proposed Adjustment and/or Distribution for the 2009 tax year on April 7, 2010, reducing Plaintiffs' child care expenses from $7,935 claimed by Plaintiffs to $6,246, thereby reducing Plaintiffs' WFC from $3,174 to $2,498 and Plaintiffs' net refund from $3,513 to $2,837. (Ptfs' Compl at 23-24; Ptfs' Ex 11.) Plaintiffs filed a Written Objection with Defendant on April 15, 2010, including a statement signed by Plaintiffs' child care provider, Dorothy Mayne (Mayne), that Plaintiffs "paid me $7935 for childcare and domestic assistance in 2009." (Ptfs' Ex 12.) Defendant issued a Notice of Refund Denial on July 2, 2010, denying Plaintiffs' WFC "because the documentation provided does not qualify as substantiation." (Ptfs' Ex 13.) The Notice of Refund Denial further stated:
 "Qualified substantiation includes canceled checks and/or bank statements with corresponding receipts that were given by the provider at the time payment was received. The canceled checks that you provided only total $6246, which is the amount your working family child care credit was adjusted to reflect. Also domestic assistance does not qualify as childcare expenses and would not be allowed. (ORS 315.262)[.]"
(Id.) Subsequently, Plaintiffs appealed to this court on July 12, 2010. (Ptfs' Compl.)
In its Answer, filed August 27, 2010, Defendant noted that:
 "The audit of [Simple Way Limited Partnership] is being conducted at this time because income from a partnership affects the Oregon individual income tax return including the CDC and WFC, once a Decision is filed by the Magistrate Division of the Oregon Tax Court (Magistrate), the year is closed and no other adjustments can be made. (See U.S. Bancorp v. Department of Revenue, 15 OTR 13 (1999)]."
(Def s Answer at 2.) Defendant further requested that Plaintiffs provide "[a] complete official copy from the IRS of [Plaintiffs'] 2009 partnership return and a copy of [Plaintiffs'] Oregon *Page 3 
partnership return." (Id.) Defendant thus raised the issue before the court of Plaintiffs' taxable income for the 2009 tax year. (See, e.g., Order Granting Discovery at 1.)
Plaintiffs have requested sanctions against Cole based on Cole's statements and behavior during the course of this appeal. (Ptfs' Closing Argument at 5.) Plaintiffs have also requested that the court refund their $75 fee. (Ptfs' Compl at 1.)
B. Working Family Credit
Murray outlined his interpretation of the statutes and rules applicable to the WFC. (Ptfs' Ex 28.) Murray testified that Plaintiffs' earned income was $19,378 for the 2009 tax year, which is within the range of $7,850 (minimum) and $92,525 (maximum) for a household of eight. (Ptfs' Exs 10; 28-1; 35; 36.) Murray testified that, in 2009, Plaintiffs "lost $1,387 in passive income" and that Plaintiffs "had six children under the age of 13 * * *. All lived with [Plaintiffs] for the entire year." (Ptfs' Ex 28. (Emphasis in original.)) The children are home-schooled. (Ptfs' Ex 18-3.)
Murray testified that, prior to hiring their current child care provider, Mayne, Tyra Murray's mother watched the children. Plaintiffs hired Mayne in 2003; Plaintiffs did not know her prior to that time. (Ptf's Ex 27-1.) Murray testified that Plaintiffs hired Mayne to provide child care so that both parents could pursue activities relating to their business, Simple Way Limited Partnership (Simple Way). Murray testified that Mayne recorded her daily hours and was paid with one monthly check for both her work providing child care and her office work for Simple Way. Plaintiffs provided 12 canceled checks from 2009 made out to Mayne from a Key Bank account in the name of The Rosary Shop. (Ptfs' Ex 1.) There is one check for each month of 2009 and the checks total $10,484.76. (Id.) Murray testified that Plaintiffs claimed only $7,935 in child care expenses because that is the portion paid to Mayne for child care. *Page 4 
Mayne provided a signed statement to Defendant that she was paid $7,935 "for childcare and domestic assistance in 2009."[1]
(Ptfs' Ex 12.) Murray testified concerning the term "domestic assistance" used in Mayne's initial statement, stating that Mayne was, essentially, a part-time, in-home nanny; while she was watching Plaintiffs' children, Mayne would also tidy up a bit, read, and engage in other similar activities. Murray testified those activities were during the time that Mayne was providing child care and supervision. The "Affidavit of Dorothy Mayne" submitted by Plaintiffs includes the following statement:
 "The childcare is provided in their home, primarily to the youngest children. It includes assisting and directing the children with their chores, reading to them, playing with them, preparing food for them and cleaning them or cleaning up after them as needed. We sometimes go on walks or play outside. While watching them, I sometimes read a book or do light cleaning in the house."
(Ptfs' Ex 27-1.) Mayne did not testify at trial; her affidavit explained "I'd prefer not to have to appear in court, and am likely caring for the children while the trial is taking place. But I am happy to answer further questions by phone or letter." (Ptfs' Ex 27-2.) Murray testified that Mayne and he discussed Mayne's affidavit and that he had typed the affidavit. Mayne reviewed, edited, and had notarized the affidavit. Cole questioned the credibility of the statements allegedly provided by Mayne because none were "in her own words" and she did not testify.
Murray provided a table stating the hours that Mayne cared for Plaintiffs' children for each month in 2009 and the amount of payment for that month. (Ptfs' Ex 16-4, 18-2.) The hours ranged from 28.15 to 70, with an average of 57.5 hours per month. Murray testified that Mayne is paid $11.50 per hour for childcare. Murray testified that he prepared the table shown in Def's Ex E-4. (Seealso Ptfs' Ex 16-4.) Cole questioned the statement in Tyra Murray's affidavit that *Page 5 
she worked 25-40 hours week, opining that she must have provided childcare based on the relatively few hours reported by Mayne. (See Def s Ex E-4; Ptfs' Ex 26-1.)
Murray testified concerning payment of childcare expenses: "The childcare expense is paid by us, through the partnership, with pre-tax dollars. Every expense to the partnership is an expense to us, personally, as we are the only general partners and we get paid from whatever is left after all other expenses are paid." Additionally, Murray stated that Mayne "is paid directly by our partnership, which reduces our income from the partnership and so is, effectively, a cost paid by us." (Ptfs' Ex 16-3.) Plaintiffs explained the distributions to Mayne as follows:
 "Per the partnership information tax returns and the partners' individual K-1 forms * * *, the worksheet for self employment calculations * * *, and my [Murray's] own testimony, money paid for childcare was a distribution from the partnership's net income. * * * Distributions from net income are a standard method of paying partners, and are not deducted as an expense by the partnership."
(Ptfs' Rebuttal and Objections Ltr at 1, May 19, 2011.)
Murray testified that Mayne's payments were deducted from the income of the partnership, but were not deducted from the gross income of the partnership. Murray testified that Mayne is one of seven limited partners and her "ownership is less than 1%." (See Ptfs' Ex 27-2.) Murray testified that Mayne became a limited partner in 2004. The Affidavit of Mayne states: "I also do order checking and shipping for the partnership for a few hours each week. That work is accounted for separately." (Ptfs' Ex 27-1.) Murray testified that Plaintiffs have a personal checking account other than the business account in the name of the Rosary Shop, and that Mayne was issued checks from the account in the name of the Rosary Shop. (See Ptfs' Ex 1.)
At trial, Murray testified, that the Schedule WFC instructions state: "You can claim this credit even if you pay your expenses with pre-tax dollars from an employer benefit plan such as a cafeteria plan or flexible spending arrangement." (Ptfs' Ex 8.) Based on his reading of those *Page 6 
instructions, Murray concluded that he could claim child care expenses even if they were paid from pre-tax dollars. Cole testified that qualifying employer programs are described in Internal Revenue Code (IRC) section 129(d) (dependent care assistance programs). Cole also testified that Plaintiffs have not claimed to qualify for the dependent care assistance programs and that, even if they did qualify, the amount of pre-tax income allowed would be limited to 25 percent.
Cole testified that he accepts that Mayne was paid $10,484; he contends that it is not clear what those payments were for because Mayne did not provide receipts or other evidence of the number of child care hours that she provided. The parties disagree as to whether receipts are required, referring to the Schedule WFC instructions and ORS 314.425 requiring substantiation. Cole further testified Defendant denied the WFC because Plaintiffs' records and letters show that Simple Way, rather than Plaintiffs, paid the child care expense.
C. Past Working Family Credit audits.
Murray testified that Plaintiffs began applying the WFC in 2005 after speaking with someone at the Department of Revenue in 2004. Murray testified that person determined that Plaintiffs' situation qualified for the WFC. Murray testified that Plaintiffs' have been audited in past years, but all previous audits have been resolved. As an example, Murray testified that, in 2007, Defendant denied Plaintiffs' credit because the partnership income was deemed "passive." Murray testified that Plaintiffs' 2007 credit was ultimately allowed after he sent a letter to the governor. Murray described another earlier audit:
 "For another return, I generated a detail from our accounting software showing the monthly payments to document our childcare expenses. They denied the credit, stating that the monthly detail report was not sufficient substantiation. DOR requested that I send canceled checks or receipts instead. I sent in canceled checks, and the credit was allowed."
(Ptfs' Ex 16-7.) *Page 7 
D. Plaintiffs' 2009 income
Murray testified that Plaintiffs are self-employed. They are the only general partners of Simple Way and the only individuals named on the Rosary Shop bank account. (See Ptfs' Ex 2.) Murray testified that Plaintiffs' personal income is whatever amount remains from the Simple Way profits after expenses are paid. He emphasized that the partnership income is "active" rather than "passive." Murray testified that Plaintiffs paid self-employment tax in the amount of $2,906 in 2009. Plaintiffs reported an adjusted gross income of $21,164 on their 2009 Oregon income tax return. (Def s Ex A-1.) Murray testified that line 15 on Plaintiffs' 2009 Schedule WFC should be $21,164 because that was Plaintiffs' adjusted gross income. (Ptfs' Ex 9-2, 9-4.)
Murray testified that Simple Way began in 1996 as a sole proprietorship under the name Hand-Made Rosaries, was incorporated in 2001, and was restructured in 2004 to a limited partnership. (See Def s Ex G.) Murray testified that Plaintiffs attempted to select the business model that best fit their situation and concluded that that model was a limited partnership. Murray testified concerning some of the many activities of Simple Way, including making rosaries, teaching self-defense, music, computer and software design, and prayer groups.
The Simple Way 2009 Schedule K (Schedule K) reports ordinary business income in the amount of $38,259 and net rental real estate loss in the amount of $1,387, for net earnings from self-employment of $20,984. (Def s Ex C-6.) The Schedule K lists $22,607 in individual (active) income to general partners and $14,265 in individual (passive) income to limited partners. (Def s Ex C-7.) The 2009 Schedule K-1 for Seth Murray lists ordinary business income in the amount of $12,003 and self-employment earnings of $10,492. (Def s Ex C-11.) The 2009 Schedule K-1 for Tyra Murray lists ordinary business income in the amount of $12,002 and self-employment earnings of $10,492. (Def s Ex C-12.) Plaintiffs reported total *Page 8 
"nonpassive income from Schedule K-1" in the amount of $24,005, from which "passive loss" in the amount of $1,387 was subtracted for a total partnership income of $22,618. (Def's Ex A-6.)
Defendant provided 2009 Schedule K-1s for six limited partners of Simple Way. (Def's C-13 through C-18.) The six 2009 Schedule K-1s provided state ordinary business income totaling $14,254. (Id.) The 2009 Schedule K-1 for Dorothy Mayne states $10,485 in ordinary business income. (Def's Ex C-13.)
Murray testified that he was unaware of Form 65, Oregon partnership return of income, until recently. As of the date of trial, Murray testified that he had filed all of the Oregon partnership returns for Simple Way. Murray testified that he does not consider the partnership returns to be relevant to the issues presented in this case. Cole testified that he could not determine Plaintiffs' earned income because he did not get a chance to verify the partnership income. Cole noted that Murray declined to provide Plaintiffs' partnership records because Plaintiff stated that information "would not provide any new information that is useful towards calculating the childcare expense and related credit." (Def's Ex E-4.) Cole testified that he received the 2009 Oregon partnership return in January 2011, but had not received the 2009 Federal partnership records. Murray testified that he had provided all the information that had been requested of him. Cole testified that Plaintiffs had been on notice since approximately August 27, 2010, that the partnership income was being audited and they never initiated contact with the Defendant to determine what information was needed to proceed with the audit.
E. Claims of harassment and misrepresentation
Plaintiffs requested "sanctions" based on Cole's statements and behavior during the course of this appeal, as outlined in Plaintiffs' Exhibit 37. Plaintiffs allege that Cole "engaged in *Page 9 
telephonic harassment of [Plaintiffs'] childcare provider" by calling her numerous times while she was on vacation. (Ptfs' Ex 16-7.) Mayne's Affidavit states
 "In August of 2010 I received multiple phone calls from and had a single conversation with an agent of the Department of Revenue. I have read Kevin Cole's account of the conversation as noted in his Status Report and Recommendation to the Court on January 11, 2001 and do not believe that it accurately represents the facts of our conversation. * * * Kevin Cole pressured me to answer questions about financial figures while I was on vacation in Wisconsin, in the middle of lunch with my family, and in a car show with my husband. Mr. Cole called repeatedly, and refused to allow us to discuss the matter at another time."
(Ptfs' Ex 27-1.) At trial, Murray retracted his previous statement that Cole attempted to extract false statements from Mayne, but maintained that Cole ignored the information provided by Plaintiffs. Cole testified that he called Mayne twice; on August 23, 2010, and on August 26, 2010. He provided notes from his conversations with Mayne on August 26, 2010. (Def's Ex H.)
Cole testified that he has had only two conversations with Murray and both occurred during case management conferences. Murray's summary of the February 24, 2011, case management conference states
 "Kevin Cole was highly aggressive and is actively misrepresenting both the facts and my communications. Claimed I had never filed a business return. Claimed I stated we had no income. Claimed I stated we had not been in business in the past, even though the letter to which he was referring clearly stated otherwise. * * * Kevin Cole is obviously lying and is coming after me, personally, and is willing to say or do whatever he thinks is necessary to prevail against me."
(Ptfs' Ex 22.)
Murray testified that Defendant failed to comply with the court's Order Granting Discovery because Cole did not provide "a complete transcript record for this case" as requested in Murray's letter dated March 10, 2011, and identified in the court's Order, dated April 8, 2011. At trial, Cole testified that he did not provide a transcript because, to the best of his knowledge, no such document exists. Cole testified that all documents in the "file" were provided. *Page 10 
 II. ANALYSIS
A. Working Family Credit
ORS 315.262 provides a refundable credit, the WFC, for qualifying taxpayers to partially offset child care costs incurred while taxpayers are working or attending school.[2]
ORS 315.262(3) states in relevant part: "A qualified taxpayer shall be allowed a credit against the taxes otherwise due under ORS chapter 316 equal to the applicable percentage of the qualified taxpayer's child care expenses (rounded to the nearest $50)." OAR 150-315.262(3), promulgated by Defendant to interpret ORS 315.262, provides in relevant part:
 "For purposes of determining the credit, the credit is limited to costs associated with child care. The payments must be made by the parent claiming the working family child care credit. Payments made by an entity or individual other than the parent claiming the credit are not payments made by the taxpayer."
OAR 150-315.262(3) (emphasis added). Defendant argues that, because the payments were made by the partnership, Plaintiffs are precluded from claiming the credit. (Ptfs' Ex 20-2.)
1. Payments for child care expenses
Murray testified that the child care provider, Mayne, is a limited partner in Simple Way. (See also Ptfs' Ex 27.) The evidence provided by Plaintiffs show that Mayne took distributions from Simple Way in the total amount of $10,485 in 2009. (Ptfs' Ex 1; Def s Ex C-13.) Mayne stated in her Affidavit that $7,935 of the $10,485 were distributions she received for child care payments. (Ptfs' Ex 27 at 1.) Murray testified that the distributions received by Mayne were paid out of The Rosary Shop bank account, not the Plaintiffs' personal checking account. Murray also testified that the child care expenses were not taken as a business deduction. (See also Def Ex C-21; C-22.) The issue presented is whether the distributions received by Mayne are payments made by Plaintiffs, or by an entity. *Page 11 
In 2009, Mayne received distributions in the amount of $10,485 from Simple Way. (Def s Ex C-13.) The distributions taken by Mayne were taxable income only to Mayne, not Plaintiffs. Plaintiffs argue that, because the distributions made to Mayne reduced the amount of Plaintiffs' share of partnership income, child care expenses were a cost to them:
 "The payments to Dorothy Mayne for childcare factually are a cost to us, the parents; it is $7,935 that we had available to us, in our control, and would otherwise have in our own personal bank account or equity accounts, but that we instead distributed to the childcare provider."
(Ptfs' Rebuttal and Objections Ltr at 3, May 19, 2011 (emphasis in original).) The $7,935 child care cost was a reduction in partnership funds available for distribution to the partners; it was not a cost paid by Plaintiffs. Funds were transferred from Simple Way and recorded as distributions to Mayne. (See Ptfs' Ex 1; Def s Ex C-13.)
OAR 150-315.262(3) provides that "[payments made by an entity or individual other than the parent claiming the credit are not payments made by the taxpayer." OAR 150-315.262(3). ORS 67.050(1) states that "[a] partnership is an entity distinct from its partners." As Simple Way is a limited partnership, it is an entity. Mayne was paid by distributions from Simple Way. The distributions made by Simple Way were not child care payments made by Plaintiffs. As general partners, Plaintiffs have control over Simple Way; however, Plaintiffs and Simple Way are not one and the same. Mayne received distributions from Simple Way, an entity. Accordingly, Plaintiffs fail to meet the criteria provided in OAR 150-315.262(3).
In Gibson v. Department of Revenue (Gibson), the court allowed a WFC for payments made by someone other than the parents. TC-MD 060399C, WL 900764 at *4 (Mar 23, 2007).
The child care payments in Gibson were made by the taxpayer's mother. Id. at *1. However, the *Page 12 
payments were allowed for purposes of the WFC because the taxpayer ultimately reimbursed her mother and thus bore the child care expense. Id. at *4. The court in Gibson stated:
 "[T]he language in the rule relied upon by the auditor, OAR 150-315.262 (3), merely precludes a taxpayer from including expenses paid by a third-party individual or organization that are not reimbursed by the taxpayer seeking the credit. Such situations might include public assistance payments on behalf of the taxpayer, and payments by a noncustodial parent pursuant to a decree of divorce. In those situations, the payments would not `be made by the parent claiming the working family child care credit, [but would instead constitute] [p]ayments made by an entity or individual other than the parent claiming the credit.' OAR 150-316.262(3). Such unreimbursed third-party childcare expenses can truly be said to have actually been paid by, and only by, the third-party payor."
Id. (emphasis added). Here, in contrast to Gibson, Plaintiffs did not reimburse Simple Way for the child care expenses paid by the entity. Plaintiffs were not the ones to ultimately bear the child care expense. The distribution made by Simple Way to Mayne does not entitle Plaintiffs to a WFC.
2. Dependent care assistance programs
Plaintiffs argue that, based upon a reading of the Schedule WFC instructions, they can claim child care expenses even if they were paid from pre-tax dollars. (Ptfs' Ex 28 at 3.) The Schedule WFC instructions state "[y]ou can claim this credit even if you pay your expenses with pre-tax dollars from an employer benefit plan such as a cafeteria plan or flexible spending arrangement." (Ptfs' Ex 8.) Murray testified that Mayne was paid with pre-tax dollars, through the partnership.
In analyzing the law related to this argument, the court is guided by the legislature's express intent to "[m]ake the Oregon personal income tax law identical in effect to the provisions of the Internal Revenue Code [(IRC)] relating to the measurement of taxable income of individuals, * * * modified as necessary by the state's jurisdiction to tax and the revenue needs of the state." ORS 316.007. OAR 150-315.262(3)(a) provides that "[c]osts associated with *Page 13 
child care include: (A) Child care expenses paid with amounts excluded from income as dependent care benefits under IRC section 129[.]" Section 129(d) states
 "[f]or purposes of this section a dependent care assistance program is a separate written plan of an employer for the exclusive benefit of his employees to provide such employees with dependent care assistance which meets the requirements of paragraphs (2) through (8) of this subsection."
IRC § 129(d). Plaintiffs submitted no evidence of the existence of a separate written plan providing employees with dependent care assistance. Without such evidence of a plan, the court cannot conclude that Plaintiffs meet the requirements of IRC § 129(d), and qualify under OAR 150-315.262(3)(a)(A).
3. Estoppel
Plaintiffs argue that they relied on an oral statement of Defendant's employee that they could claim the WFC. (Ptfs' Ex 16 at 6.) Plaintiffs allege that, a few years ago, they inquired with Defendant to determine if they were eligible to claim the WFC. (Id.) After explaining their business structure, work, and child care situation to Defendant, Plaintiffs "asked if we would be eligible. [Defendant] said yes, that we should apply. * * * We began to apply for the credit." (Id.)
In the area of taxation, estoppel is granted in rare instances when the following three elements have been proven: (1) Defendant's conduct misled Plaintiffs; (2) Plaintiffs had a good faith reliance on the conduct; and (3) Plaintiffs were injured by their reliance on Defendant's conduct. See Sayles v. Dept. of Rev.,13 OTR 324, 328 (1995). With respect to the first element, "taxpayers can claim estoppel against governmental taxing authorities only `when there is proof positive that the collector has misinformed the individual taxpayer.'" Webb v. Dept. ofRev. (Webb), 18 OTR 381, 384 (2005), quoting Johnson v.Tax Commission, 248 Or 460, 463, 435 P2d 302 (1967). This court has concluded that "proof positive" is a "stringent proof requirement." Webb, 18 OTR at 384 (citation omitted). *Page 14 
"Mere testimony that the government orally misguided taxpayer, is generally, by itself, insufficient to show `proof positive' that the taxpayer was misled." Schellin v. Dept. of Rev.,15 OTR 126, 131 (2000). To meet the standard of proof positive, taxpayers who rely on oral communication must provide "detailed memoranda that are written contemporaneously with the communications and that corroborate the taxpayer's recollection of them" or describe
 "the communications in great detail, including the nature, date, and time of each conversation; the names and relationships to the parties of all those who took part in each conversation; those persons' knowledge of taxpayer's situation and of the relevant law; and the exact statements made as well as their form and intended meaning."
Webb, 19 OTR at 26.
Murray testified that he had a phone conversation with an employee of Defendant in 2004 who told him that he could claim the WFC. He did not identify the person with whom he spoke or provide a contemporaneously written memorandum of the conversation. Without that additional written support, Murray's testimony concerning his telephone conversation in 2004 is not sufficient to meet the standard of proof positive. Plaintiffs fail to meet the required elements of an estoppel claim.
B. Plaintiffs' 2009 Income
Defendant opened an audit of Plaintiffs' 2009 income and raised the issue of Plaintiffs' income for the 2009 tax year. ORS 305.575 provides this court with jurisdiction to determine the correct amount of deficiency regardless of the amount contained in Defendant's assessment. Defendant, having raised the issue of Plaintiffs' income, has the burden of proof:
 "In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief[.]"
ORS 305.427 (emphasis added). Defendant, rather than Plaintiffs, raised the issue of Plaintiffs' tax year 2009 income. Defendant has not established by a preponderance of the evidence that *Page 15 
Plaintiffs' tax year 2009 income is other than the amount reported by Plaintiffs and has, therefore, failed to meet the burden of proof.
C. Sanctions
Plaintiffs have requested sanctions against Cole based upon Cole's statements and behavior during the course of this appeal. (Ptfs' Closing Argument at 5). Plaintiffs allege that Cole harassed Mayne, made factually incorrect statements, and failed to comply with the court's Order Granting Discovery. (Id.)
First, Plaintiffs allege that Cole failed to comply with the court's Order Granting Discovery because Cole did not provide "a complete transcript record for this case" as requested in Murray's letter dated March 10, 2011, and identified in the court's Order of April 8, 2011. At trial, Cole testified that he did not provide a transcript because, to the best of his knowledge, no such document exists at the Department of Revenue. Cole testified that all documents that were in Defendant's "file" were provided. Based upon Cole's testimony, the court finds that Cole complied with the court's Order Granting Discovery and sanctions are not appropriate.
Second, Plaintiffs allege that Cole harassed Mayne by telephoning her multiple times. The tax court's jurisdiction is set forth in ORS 305.405 and ORS 305.410. ORS 305.405 states the powers of the court "in cases within its jurisdiction pursuant to ORS 305.410." ORS 305.410(1) provides that:
 "Subject only to the provisions of ORS 305.445 relating to judicial review by the Supreme Court and to subsection (2) of this section, the tax court shall be the sole, exclusive and final judicial authority for the hearing and determination of all questions of law and fact arising under the tax laws of this state"
(Emphasis added.) The Oregon Supreme Court discussed the jurisdiction of this court in Sanok v. Grimes:
 "Our cases set two boundaries [for jurisdiction]. On the one hand, questions which must be resolved in order to decide taxability or the amount of tax do arise under the tax laws. On the other hand, a precondition to taxation does not arise *Page 16 
under the tax laws if jurisdiction to decide that precondition has been affirmatively located in another court or if a decision on the precondition has substantial non-tax consequences."
294 Or 684, 662 P2d 693, 697 (1983) (footnotes omitted). The court's jurisdiction to hear Plaintiffs' allegations of harassment by Cole has been "affirmatively located in another court" and a decision on those allegations will not affect the determination of Plaintiffs' tax claims. Id. Plaintiffs' requested sanctions for Cole's alleged harassment of Mayne are outside the jurisdiction of this court.
Finally, Plaintiffs allege that Cole made factually incorrect statements. (Ptfs' Closing Argument at 5.) The court held a trial in this matter during which Cole testified under oath. Plaintiffs had the opportunity to cross examine Cole on his testimony. Based on the evidence and testimony presented at trial, the court makes findings of fact and credibility determinations that are reflected in this Decision. The court is not aware of any false statements made by Cole at trial. Plaintiffs' request for sanctions is hereby denied.
D. Filing Fee
Plaintiffs request that the court refund the $75 fee paid to file this appeal. (Ptfs' Compl at 1.) ORS 305.490(1) (2009) states that "Plaintiffs or petitioners filing a complaint or petition in the tax court shall pay a filing fee at the time of filing for each complaint or petition[.]" There is no provision in the statutes or court rules for a refund of that fee. Accordingly, Plaintiffs' request must be denied.
 III. CONCLUSION
Plaintiffs did not make the child care payments at issue in this case; those payments were made by an entity, Simple Way. Plaintiffs did not provide evidence to show participation in a qualifying dependent care assistance program. Finally, Plaintiffs did not provide sufficient evidence to show that Defendant's conduct misled them to such an extent that they met the *Page 17 
elements for an estoppel claim. For those reasons, Plaintiffs are not entitled to their claimed WFC under ORS 315.262. Now, therefore,
IT IS DECIDED that Plaintiffs are not entitled to their claimed 2009 working family credit. Plaintiffs' 2009 tax liability shall be recalculated to conform with this determination;
IT IS FURTHER DECIDED that Defendant's appeal of Plaintiffs' 2009 taxable income is denied;
IT IS FURTHER DECIDED that Plaintiffs' request for sanctions is denied; and
IT IS FURTHER DECIDED that Plaintiffs' request for reimbursement of the $75 fee is denied.
Dated this ____ day of August 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the dateof the Decision or this Decision becomes final and cannot bechanged.
 This document was signed by Magistrate Pro Tempore Allison R.Boomer on August 23, 2011. The Court filed and entered this documenton August 23, 2011.
[1] Cole testified that he believed Plaintiffs' statements regarding the services provided by Mayne has been inconsistent. For instance, in a subsequent document filed with the court, Mayne's signed affirmation appears, stating: "I was paid $7935 by Seth and Trya Murray in 2009 for the time I spent providing childcare to their children." (Ptfs' Ex 16-3.) Murray testified that Mayne clarified her previous statement after realizing the confusion created by inclusion of the reference to "domestic assistance." Murray testified that Plaintiffs "think of childcare as domestic assistance since it takes place in [their] home." (Ptfs' Ex 16-3.)
[2] All references to the Oregon Revised Statutes (ORS) and to the Oregon Administrative Rules (OAR) are to 2007.
 *Page 1